United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIVOT POINT PARTNERS, LLC, <br><br> Appellant, <br><br> v. <br><br> E. LYNN SCHOENMANN, *et al.*, <br><br> Appellee. | Case No.: 17-CV-1680 YGR <br><br> ORDER DENYING LEAVE TO APPEAL |

Presently before the Court is the motion of Pivot Point Partners, LLC for leave to appeal, pursuant to 28 U.S.C. section 158(a) and Federal Rules of Bankruptcy Procedure 8002 and 8004(a)(2) and (b). Pivot Point seeks to appeal an order of the bankruptcy court denying its motion for summary judgment.

Having carefully considered the motion and response thereto, the decision of the bankruptcy court denying the motion for summary judgment, and the record of the prior proceedings before this Court, and for the reasons stated herein, the Court **DENIES** the motion for leave to appeal the interlocutory order.

I. BACKGROUND

A. **Summary of Allegations**

Appellee E. Lynn Schoenmann ("the Trustee") is the bankruptcy trustee for the bankruptcy estate of debtor W.B Coyle. The Trustee filed a complaint in an adversary proceeding the bankruptcy court against defendants Trifiletti, Innocenti LLC, and Pivot Point Partners, LLC, alleging a fraudulent transfer of real property ("the Powell Street Property") belonging to the bankruptcy estate. In the second amended complaint filed May 8, 2015, in the adversary

proceeding (*Schoenmann v. Trifiletti, et al.*, U.S. Bankruptcy N.D. Cal. Case No. 14-3144-HLB, Dkt. No. 59, "SAC"), the Trustee alleges as follows:

Darrel Horsted ("Horsted") and Telegraph Hill Properties (controlled by Coyle) and North Beach Partners LLP (NBP), also controlled by Coyle, owned the Powell Street Property as of April 2004. (SAC ¶ 13.) In February 2012, Horsted sued Coyle and others in connection with the development of the Powell Street Property. (*Id.* at ¶ 14.) In November 2012, Horsted agreed to settle that suit. (*Id.* at ¶ 15.) As part of that settlement, Horsted agreed to assign his interest in the Powell Street Property to Innocenti, LLC, (identified as the "buyer") in exchange for $1.25 million. (*Id.* at ¶¶ 15, 17.) Coyle represented, on behalf of Telegraph and NBP, that any of their interests in the property were assigned to Innocenti as well. The Trustee alleges that Innocenti is also controlled by Coyle. (*Id.* at ¶ 16.)

In December 2012, Innocenti took out a $1.2 million loan from Lone Oak Fund, LLC, to pay Horsted on the settlement deal, secured by a deed of trust on the Powell Street Property. Innocenti is listed as the borrower. (*Id.* at ¶ 17.) Pursuant to the settlement agreement, Horsted transferred his interest in the Powell Street Property to Innocenti. (*Id.* at ¶19.) Coyle is alleged to have transferred his entire interest in Innocenti to his mother, Trifiletti. (*Id.* at ¶23.) In 2013, Innocenti defaulted on payments on the loan. The Trustee alleges that no payments were made at all. (*Id.* at ¶ 26.)

Coyle filed his bankruptcy petition on November 4, 2013. (*Id.* at ¶30.)

The Trustee alleges that Coyle organized the series of transactions behind the scenes to keep Lone Oak from foreclosing on the property and "hang onto it" through the bankruptcy proceedings, allowing Pivot Point to obtain the property at a lower price than it would otherwise have fetched on the market. (*Id.* at ¶¶ 27, 28, 29, 30.)[1] Thus, on December 24, 2013, Pivot Point purchased the promissory note and deed of trust on the Powell Street Property from Lone Oak paying $1.4 million (which included the default interest rate of 24%). Thereafter, Pivot Point issued a Notice of Trustee's Sale after it purchased the property. (*Id.* at ¶ 31.) Notwithstanding the notice, Pivot Point

---

[1] *See, e.g.*, SAC ¶ 29 (Pivot Point's managing member wrote: "I will need WB [Coyle]'s advice on the foreclosure part and how to be a loan manager – ha – managing a loan he doesn't plan on paying to get us a building at a price we could never get on the open market.").

2

held off on the foreclosure sale in order to run up the default interest to the point where no other creditors would be interested in, or reach the equity in, the Powell Street Property, now valued at $2 million. (*Id.* at ¶¶ 33, 34, 35, 36.) According to the Trustee, Pivot Point's members (Tamar Fruchtman and Gabrielle Fruchtman Larkin) are Coyle's ex-girlfriend and her sister (and the rest of the members are Fruchtman and Larkin's current spouses). (*Id.* at ¶ 24.)

Through the adversary proceeding, the Trustee seeks to unwind some of the transactions related to the Powell Street Property and to Innocenti, with the goal of returning the Powell Street Property or its value to Coyle's bankruptcy estate. The Trustee alleges that Pivot Point acted as a mediate transferee of Coyle's interest in the property (*i.e.*, the interest that was represented by the deed of trust) when it purchased the Lone Oak Fund note and deed of trust in December 2013, and that the transfer was made with intent to hinder, delay or defraud Coyle's creditors.

### B. Procedural History

The Trustee filed the Second Amended Complaint in the adversary proceeding against Pivot Point, Trifiletti, and Innocenti, on May 8, 2015. On June 25, 2015, the Trustee sought a preliminary injunction, which the bankruptcy court granted. In prior proceedings, this Court held that the preliminary injunction should be vacated because the bankruptcy court's finding of likelihood of success on the merits relied on a "split second theory" that was not supported by California law. (Order Vacating Preliminary Injunction, *In re Coyle*, 15-cv-4126, Dkt. No. 28, at 11, "PI Order".)

The case then proceeded before the bankruptcy court, with Pivot Point filing a motion for summary judgment of all claims against it on December 7, 2016. Prior to the hearing, the bankruptcy court issued a detailed tentative ruling stating the reasons for its inclination to deny the motion, and inviting the parties to contest or accept the tentative ruling. Pivot Point contested the tentative ruling and a hearing was held on March 9, 2017. On March 10, 2017, the bankruptcy court issued its order denying Pivot Point's motion for summary judgment which decided, among other things, that the PI Order did not bar all federal and state fraudulent transfer claims as a matter of law, and that there were disputed issues of material fact as to whether Pivot Point paid a

reasonably equivalent value for the Lone Oak note and deed of trust, or made a valid payoff or satisfaction of an antecedent debt.

**II.    APPLICABLE STANDARD**

This Court has jurisdiction to hear appeals from interlocutory orders of the bankruptcy court upon a granting a motion for leave to appeal. *See* 28 U.S.C. § 158(a), Fed. R. Bankr. P. 8002, 8004(a)(2)(b). Leave to appeal an interlocutory order of the bankruptcy court is appropriate where: (1) there is a controlling question of law; (2) as to which a substantial ground for a difference of opinion exists; and (3) an immediate appeal could materially advance the ultimate termination of the litigation. *In re Bertain*, 215 B.R. 438, 441 (B.A.P. 9th Cir. 1997) (court considering whether to grant leave to appeal bankruptcy interlocutory decision is guided by 28 U.S.C. § 1292(b)); *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) (under section 1292(b), interlocutory appeal is within court's discretion where there is a controlling question of law, substantial grounds for difference of opinion, and appeal may materially advance the ultimate termination of the litigation, as well as "exceptional circumstances"). In deciding whether to grant leave to appeal under section 158(a)(3), courts look to the analogous provisions of 28 U.S.C. section 1292(b) governing review of interlocutory district court orders by the courts of appeal. *Belli v. Temkin (In re Belli),* 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001); *In re Wilson*, No. BR 13-11374 AJ, 2014 WL 122074, at *1 (N.D. Cal. Jan. 10, 2014).

First, a question of law is "controlling" if its resolution on appeal could "materially affect the outcome of the litigation in district court." *In re Cement*, 673 F.2d at 1026 (review of recusal order would be collateral to, not controlling of, basic issues of lawsuit); *Helman v. Alcoa Global Fasteners, Inc.*, 637 F3d 986, 990-992 (9th Cir. 2011) (permission to appeal under 1292(b) granted where issue of definition of "high seas" in federal statute was determinative of the viability of the complaint).

On the second factor, substantial grounds for a difference of opinion on a legal question are generally found to exist where: the relevant circuit court has not spoken on the point and other circuits are in dispute; complicated questions of foreign law are involved; or it presents novel and difficult questions of first impression. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir.

4

2010); *In re Sperna*, 173 B.R. 654, 658 (B.A.P. 9th Cir. 1994) (conflicting views on issue created substantial ground for difference of opinion, supporting leave to appeal). The fact that an issue is novel, or that there is a disagreement about which authority is controlling does not, by itself, constitute a substantial difference of opinion to support an interlocutory appeal. *Couch,* 611 F.3d at 633; *Reese*, 643 F.3d at 688 (lack of cases directly conflicting with the district court's construction of the law does not mean that there is not substantial ground for difference of opinion). Likewise, disagreeing with the bankruptcy court's ruling, no matter how strong that disagreement, is not grounds for an interlocutory appeal. *Id.*

Finally, on the third factor, an immediate appeal of an interlocutory order must serve judicial economy by materially advancing the ultimate termination of the litigation. *See In re Travers,* 202 B.R. 624, 626 (9th Cir. BAP 1996); *In re Coleman Enterprises, Inc.* 275 B.R. 533, 538-539 (8th Cir. BAP 2002). This factor is met when resolution of the controlling question of law "may appreciably shorten the time, effort, or expense of conducting a lawsuit." *In re Cement*, 673 F.2d at 1027. The burden to show that an interlocutory appeal would materially advance the ultimate termination of litigation is not established by the mere fact that review of a denial of summary judgment might ultimately end the litigation. *McDonnell v. Riley*, No. 15-CV-01832-BLF, 2016 WL 613430, at *5 (N.D. Cal. Feb. 16, 2016).

Denial of leave to appeal is left to the sound discretion of the court. *In re City of Desert Hot Springs*, 339 F.3d 782, 787 (9th Cir. 2003). While the Court applies a flexible standard in considering whether to hear interlocutory appeals in the bankruptcy process, "traditional finality concerns still 'dictate that we avoid having a case make two complete trips through the appellate process.'" *Id.* at 787 (internal quotation and citation omitted) (denying review of decision denying leave to appeal interlocutory order). Generally, only exceptional circumstances will warrant an interlocutory appeal. *In re Cement*, 673 F.2d at 1026.

### III. DISCUSSION

Pivot Point argues that there are "controlling issues of law" as to: (1) application of the "law of the case" doctrine; (2) existence of a claim for fraudulent conveyance based upon a transfer of equity theory; and (3) the burden of proof on summary judgment, *i.e.,* whether the Trustee was

required to present evidence in opposition to avoid summary judgment in Pivot Point's favor. Pivot Point's arguments that these are "controlling issues of law" as to which there are "substantial grounds for disagreement" ring hollow. Pivot Point cites no authority indicating that these legal issues are subject to any serious disagreement within the Ninth Circuit or among the circuits, nor does it argue they are complicated questions of foreign law, or novel, difficult questions of first impression. To the contrary, Pivot Point appears simply to disagree with the bankruptcy court's legal analysis, based on its reading of this Court's PI Order. For the reasons stated herein, Pivot Point has not given a sufficient basis for granting the extraordinary relief of an interlocutory appeal.

Here, the Trustee alleges that: (1) Horsted transferred his interest in the Powell Street Property to Innocenti (the alter ego of Coyle) in exchange for $1.25 million (SAC ¶ 17); (2) that a $1.25 million loan was obtained by Innocenti/Coyle from Lone Oak Funds, and a transfer of a deed of trust on the Powell Street Property was made from Innocenti/Coyle to Lone Oak Funds as security for the loan (*id.* ¶ 17) ; and (3) the purchase of that loan and deed of trust by Pivot Point from Lone Oak meant that Pivot Point holds the deed of trust originally provided as security for the loan by Innocenti/Coyle (*id.* ¶ 29). Pivot Point did not dispute these allegations in its summary judgment motion, so there were no factual issues for the Trustee to rebut. Rather, Pivot Point's motion relied on a purely legal argument: that all of the Trustee's fraudulent conveyance claims were barred as a matter of law based on this Court's prior order, reversing the grant of a preliminary injunction.

The PI Order was limited to review of the grounds on which the preliminary injunction was granted by the bankruptcy court. It expressly stated that it did not "reflect a view on the merits of the Trustee's claims against Pivot Point." (PI Order at 11.) The underlying order this Court reviewed was brief, indicating that it granted the preliminary injunction "[f]or the reasons stated on the record." (*In re WB Coyle*, 15-cv-4126, Dkt. No. 3-19 at 2.) The reasons stated by the bankruptcy court on the record were, in sum, that:

> [i]n order for Lone Oak to have obtained an interest under the deed of trust, the prior secured creditor had to release its interest. *And so even if for a split second, there was interest of the Debtor, that interest of Innocenti that was transferred to Lone Oak and then it passed to Pivot Point* and because the transfer of Mr.

> Coyle's interest – or North Beach Partners' interest to Innocenti in the Powell Street is vulnerable, I find that there was interest of the Debtor in property that is vulnerable here for purposes of the Pivot Point transaction that the Trustee attacks."

(*Id.*, Dkt. No. 3-18 [Transcript] at 29, emphasis supplied.)

In its review of that order, the Court held that the bankruptcy court's finding of likelihood of success on the merits relied on a "split second theory" which found no support in California law. On this basis, the Court determined that the preliminary injunction should be reversed. (PI Order at 10-11 ("grant of the preliminary injunction was therefore an abuse of discretion insofar as the Trustee's likely success on the merits relied upon the "split second" theory).)[2] The issue of whether the underlying decision ought to be affirmed for reasons other than those stated in the bankruptcy court order was not argued, nor did the Trustee offer arguments beyond mere citation of the statute, to support its theory on the merits. The PI Order therefore did not reach the ultimate question of whether the transfer of the deed of trust on the Powell Street Property from Lone Oak to Pivot Point could qualify as a fraudulent transfer for purposes of the 11 U.S.C. section 548(a)(1)(A). It only determined that the theory relied upon in the underlying order was not supported by any authority, either in that order or offered on appeal by the Trustee.

In sum, Pivot Point's argument that the bankruptcy court erred is based upon an overly broad reading of the narrow PI Order issued by this Court. The PI Order did not establish any "law of the case" that the transfer of a deed of trust on the Powell Street Property from Innocenti/Coyle to Lone Oak, and then to Pivot Point, could not be considered an avoidable, fraudulent transfer of an interest in property as stated in section 548. Nor did the Court make a determination that Pivot

---

[2] As the Court stated in the PI Order,
> In so ruling the Court does not ignore the evidence showing Pivot Point likely engaged in troubling activities which, at a minimum, reflect its alliance with and complicity in the Debtor's history of fraudulently avoiding his creditors. This Order does not condone those activities nor does it reflect a view on the merits of the Trustee's claims against Pivot Point. Instead, this Order is limited to review of the preliminary injunction and the grounds upon which the bankruptcy court issued the injunction. The Court concludes only that it was an abuse of discretion to grant the preliminary injunction for the legal and factual reasons set forth by the bankruptcy court.

(*Id.* at 14.)

7

Point could not be considered a mediate transferee under the statute. Thus, there are no grounds for an immediate, interlocutory appeal. The motion is **DENIED**.

In denying this motion for leave to appeal, the Court notes that its reading of the pertinent authorities is that Congress intended for the Bankruptcy Code's definition of "transfer" to be as broad as possible. *See* 11 U.S.C. § 101(54)(D) ("transfer" encompasses every "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property."); *accord Matter of Besing*, 981 F.2d 1488, 1492 (5th Cir. 1993). Specifically, the Code includes in the definition of transfer of an interest in property "the creation of a lien." 11 U.S.C. § 101(54)(A). Controlling Ninth Circuit precedent holds that a fraudulent transfer may include not only transfers of the ownership of property, but also transfers of an interest less than ownership, including a lien or deed of trust. *See In re Fair Oaks, Ltd.*, 168 B.R. 397, 401 (B.A.P. 9th Cir. 1994) (transfer of deed of trust constituted a transfer of an interest in property for purposes of section 548(a); *In re Ezra*, 537 B.R. 924, 929, 935 (B.A.P. 9th Cir. 2015) (affirming bankruptcy court judgment avoiding 2004 deed of trust and the 2009 deed of trust "as actual fraudulent transfers under § 544(b)"); *see also In re Mastro*, 465 B.R. 576, 620 (Bankr. W.D. Wash. 2011) ("The Medina Deed of Trust is avoidable by the Trustee as a fraudulent transfer pursuant to § 548 as the entire February Note transaction was sham."). These authorities are what should control the analysis, here and moving forward in the bankruptcy proceedings.

This order terminates this bankruptcy appellate proceeding. The Clerk is directed to terminate the case and close this docket.

**IT IS SO ORDERED**.

Date: September 28, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**